**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:06CV-P570-C**

**DAVID THOMAS COHRON
PLAINTIFF**

**v.**

**CITY OF LOUISVILLE** *et al.*
**DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the court on the parties' cross-motions for summary judgment. The court will grant the defendants' motion as to Cohron's retaliation claim, but it will deny both motions as related to Cohron's excessive-force claim because the parties have argued the motions under an incorrect legal standard. The court will permit the parties to file additional potentially dispositive motions as to the excessive-force claim using the proper Fourth Amendment standard in accordance with this opinion.

### I. Background

On December 21, 2005, the plaintiff, David Thomas Cohron, was arrested by the Louisville Metro Police for attempting to steal approximately two-hundred dollars worth of meat from a local Kroger grocery store. The police placed him under arrest outside of the Kroger store and then transported him the short distance to the Louisville Metro Police Department. The arresting police officers noted on

their report that Cohron appeared to be "highly intoxicated."

After arriving at the Louisville Metro Police Department, Cohron began the booking process. Cohron was instructed by an officer to remove his jacket and to empty his pockets. In an effort to demonstrate that he did not have any contraband on his person, Cohron unilaterally decided to strip down to his boxer shorts.[1]  This apparently violated the jail's procedures. Thus, defendant Hornback instructed Cohron to put his jeans back on. Cohron complied. Defendant Basham then proceeded to search Cohron's removed clothing while defendant Hornback began to search Cohron's person. At this time, Cohron was wearing only his pants.

The search and ensuing events were captured on videotape.[2]  The videotape shows defendant Hornback instructing Cohron to place his hands on the wall. Cohron removes his hands from the wall a couple of times during the search. From the tape, it appears that he removes his hands as he speaks to the officers. Each time, it appears that the officers instruct Cohron to put his hands back on the wall. While defendant Hornback is searching what appears to be Cohron's genital region, Cohron takes his hands off the wall and turns toward Hornback. Cohron claims that he was turning toward Hornback only to remark that the search of his genital region had gone on long enough. Hornback claims that Cohron turned because he

---

[1]During a previous arrest, Cohron had been caught trying to smuggle cigarettes into the jail by hiding them between his buttocks.

[2]There is only a video recording of the incident. There is no accompanying audio recording.

was trying to strike him with his elbow. Without the benefit of audio, it is difficult to decipher exactly what transpired. It is clear, however, that as Cohron turns Hornback grabs him, pushes him up against the wall, and then with Basham's assistance brings Cohron down to the floor. Basham and Hornback place Cohron on the floor in the prone position. Quickly, they are joined by two additional officers, defendants Estes and Dixon.

Together the four defendants restrain Cohron on the floor. The defendant officers claim that Cohron continued to struggle with and resist them even after he was taken to the floor. Cohron claims that he did not resist the officers. The videotape is not entirely clear on this point. All parties agree that Cohron was sprayed with oleoresin capsicum (pepper) spray by defendant Dixon while he lay on the floor. However, Cohron claims that he was sprayed after he was handcuffed, and the defendants assert that he was sprayed before he was handcuffed. The videotape is not entirely clear on this point either. All parties agree that Cohran's head struck the concrete floor when he was taken down by defendant Hornback, causing it to bleed and necessitating some medical attention. It appears from the record that defendant Hornback pressed criminal charges against Cohron arising out the booking incident. Cohron has submitted a docket sheet that shows that a Jefferson County District Court judge later dismissed those charges.

Cohron claims that after the incident he was retaliated against by having his name removed from the work list. He also claims that he was threatened by

3

Officer Wesley. He alleges that Officer Wesley told him he would "beat the shit" out of him if he continued to pursue his claims against defendant Hornback. Cohron further claims that while he was in Louisville Metro, defendant Hornback called him a "moron" and his cell was searched without cause.

## II. Analysis

Section 1983 provides a federal cause of action for the deprivation of "any rights, privileges or immunities secured by the Constitution and law." 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Cohron's § 1983 claims fall into two categories: (1) that the defendants violated his constitutional rights by subjecting him to excessive force during the booking process; and (2) that the defendants unconstitutionally retaliated against him for reporting the alleged assault and for filing this lawsuit. Each claim is addressed below.

**A.      Excessive-force claim**

The defendants argue that Cohron's excessive-force claim fails as a matter of law because there is no evidence that they violated the Eighth Amendment by acting "maliciously or wantonly for the purpose of causing harm." Likewise, in response to the defendants' motion for summary judgment, Cohron relies on the

Eighth Amendment.[3] Because Cohron was being booked at the time of the alleged assault, however, the Eighth Amendment is inapposite. The Fourth Amendment, not the Eighth Amendment, applies to an officer's use of force during a booking procedure. *See Harris v. City of Circleville*, 583 F.3d 356, 372 (6th Cir. 2009) (citing *Lawler v. City of Taylor*, 268 F. App'x 384 (6th Cir. 2008)). The analysis under the Fourth Amendment is markedly different than it would be under the Eighth Amendment. In the context of the Fourth Amendment, force becomes constitutionally excessive if it is "objectively [un]reasonable in light of the facts and circumstances confronting" the officer. *Graham v. Connor*, 490 U.S. 386, 397 (1989). The inquiry under the Fourth Amendment is an objective one, "and subjective concepts like 'malice' and 'sadism' [that are the touchstone of an Eighth Amendment claim] have no proper place in that inquiry." *Id.* at 399.

Because the parties have argued Cohron's excessive-force claim under the wrong standard, the court will deny the pending summary-judgment motions with respect to that claim. The court will allow the parties to file a second, potentially dispositive motion on the excessive- force claim against the defendants in their individual and official capacities using the proper Fourth Amendment analysis.

**B.    Retaliation claim**

Cohron also argues that the defendants retaliated against him for exercising

---

[3]Cohron asserted in his complaint that he was suing the defendants under the Fourth and Fourteenth Amendments. He did not mention the Eighth Amendment.

5

his right to file grievances concerning the assault, for filing an internal complaint, and for filing this lawsuit. A First Amendment retaliation claim requires evidence that: (1) the plaintiff engaged in conduct protected by the First Amendment; (2) the government actor took an adverse action against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the fact that the plaintiff engaged in the protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Filing a lawsuit or an internal grievance constitutes protected conduct implicating the First Amendment in this circuit. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). It is undisputed that Cohron filed an internal complaint about the incident as well as this lawsuit. Thus, Cohron satisfies the first element.

Cohron's removal from the work list does not constitute adverse action. *See Jewell v. Leroux*, 20 F. App'x 375, 377 (6th Cir. 2001) (finding no adverse action where plaintiff alleged he had been wrongfully removed from a prison job and transferred to another prison in retaliation for filing prison grievances). Additionally, even if the removal could somehow be construed as an adverse action, Cohron has not submitted any evidence that suggests that the removal was motivated by a desire to punish him for filing complaints.

Defendant Hornback's name-calling does not satisfy the second element. Verbal harassment would not deter a person of ordinary firmness from engaging in

6

protected conduct. *See Smith v. Craven*, 61 F. App'x 159, 162 (6th Cir. 2003). "An inmate has no right to be free from verbal abuse, . . . and minor threats do not rise to the level of a constitutional violation." *Id.* Likewise, "the single search of a prison cubicle would not deter a person of 'ordinary firmness' from pursuing constitutional grievances." *Tate v. Campbell*, 85 F. App'x 413, 417 (6th Cir. 2003).

Cohron's claim that Officer Wesley threatened to physically harm him if he continued to pursue his complaints against defendant Hornback could satisfy the second element. *See Cantu v. Mich. Dep't of Corr.*, 653 F. Supp. 2d 726, 744 ( E.D. Mich. 2009) (holding that guard's comment to prisoner that "snitches get stitches" would "without a doubt deter [an] individual of ordinary firmness"). However, Cohron did not name Officer Wesley as a defendant in his complaint, nor does he allege that any of the named defendants directed Officer Wesley to threaten him. Rather, it appears from Cohron's complaint that Officer Wesley acted gratuitously out of his own personal desire to protect a fellow officer. Cohron cannot hold the named defendants liable based on the actions of their co-worker.

In short, Cohron has failed to allege a set of facts that would support a cognizable claim of First Amendment retaliation against the named defendants. Therefore, the defendants will be granted summary judgment on this claim.

### IV. Order

Accordingly, **IT IS ORDERED** that Basham, Dixon, Estes, and Hornback's

motion for summary judgment (DN 58) is **GRANTED** with respect to Cohron's retaliation claim and that claim is **DISMISSED WITH PREJUDICE**; the motion is **DENIED** with respect to Cohron's excessive-force claim. Cohron's motion for summary judgment (DN 61) is **DENIED**.

**IT IS FURTHER ORDERED** that the parties may file additional summary-judgment motions on the excessive-force claim using a Fourth Amendment analysis within **30 days of the entry of this order**. The parties shall have 20 days to file any responses and 10 days to file any replies.

The clerk of court is directed to mail a copy of this memorandum opinion and order to the *pro se* plaintiff.

Signed on March 19, 2010

**Jennifer B. Coffman, Judge**
**United States District Court**