UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:06CV-P570-C

**DAVID THOMAS COHRON
PLAINTIFF**

v.

**CITY OF LOUISVILLE** *et al.*
**DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is once again before the court on the parties' cross-motions for summary judgment.[1] The court will deny the motions because a factual dispute exists as to whether the force used by defendants was reasonable.

### Background

On December 21, 2005, the plaintiff, David Thomas Cohron, was arrested by the Louisville Metro Police for attempting to steal approximately two-hundred dollars' worth of meat from a local Kroger grocery store. The police placed him under arrest outside of the Kroger store and then transported him the short distance to the Louisville Metro Police Department. The arresting police officers noted on their report that Cohron appeared to be "highly intoxicated."

After arriving at the Louisville Metro Police Department, Cohron began the

---

[1] The court previously granted the defendants summary judgment as to Cohron's retaliation claim. The court denied summary judgment to both parties as to Cohron's excessive-force claim because their motions were based on an incorrect legal standard. The court permitted the parties to file additional dispositive motions as to the excessive-force claim using the proper Fourth Amendment standard.

booking process. Cohron was instructed by an officer to remove his jacket and to empty his pockets. In an effort to demonstrate that he did not have any contraband on his person, Cohron unilaterally decided to strip down to his boxer shorts.[2] This apparently violated the jail's procedures. Thus, defendant Hornback instructed Cohron to put his jeans back on. Cohron complied. Defendant Basham then proceeded to search Cohron's removed clothing while defendant Hornback began to search Cohron's person. At this time, Cohron was wearing only his pants. The search and ensuing events were captured on videotape.[3] The videotape shows defendant Hornback instructing Cohron to place his hands on the wall. Cohron removes his hands from the wall a couple of times during the search. From the tape, it appears that he removes his hands as he speaks to the officers. Each time, it appears that the officers instruct Cohron to put his hands back on the wall, and that Cohron complies with their directives. While defendant Hornback is searching what appears to be Cohron's genital region, Cohron takes his hands off the wall and turns toward Hornback. Cohron claims that he was turning toward Hornback only to remark that the search of his genital region had gone on long enough. Hornback claims that Cohron turned because he was trying to strike him with his elbow. Without the benefit of audio, it is difficult to decipher exactly what transpired. It is clear, however, that as Cohron turns Hornback grabs him, pushes

---

[2]During a previous arrest, Cohron had been caught trying to smuggle cigarettes into the jail by hiding them between his buttocks.

[3]There is only a video recording of the incident. There is no accompanying audio recording.

him up against the wall, and then with Basham's assistance brings Cohron down to the floor. Cohron's head hits the concrete floor as he is taken down, causing it to bleed. Basham and Hornback then place Cohron on the floor in the prone position. Quickly, they are joined by two additional officers, defendants Estes and Dixon.

Together the four defendants restrain Cohron on the floor. The defendant officers claim that Cohron continued to struggle with and resist them even after he was taken to the floor. Cohron claims that he did not resist the officers. The videotape is not entirely clear on this point. All the parties agree that Cohron was sprayed with oleoresin capsicum (pepper) spray by defendant Dixon while on the floor. However, Cohron claims that he was sprayed after he was handcuffed, and the defendants assert that he was sprayed before he was handcuffed. The videotape is not entirely clear on this point either. All parties agree that Cohran's head struck the concrete floor when he was taken down by defendant Hornback, causing it to bleed and necessitating some medical attention. It appears from the record that defendant Hornback pressed criminal charges against Cohron arising out of the booking incident. Cohron has submitted a docket sheet that shows that a Jefferson County District Court judge later dismissed those charges.

**Analysis**

"[T]he Fourth Amendment protects pretrial detainees arrested without a warrant through completion of their probable-cause hearing." *Aldini v. Bodine*, Nos. 09-3183/3258, 2010 U.S. App. LEXIS 13207 at *2-3 (6th Cir. June 29, 2010).

3

The alleged assault on Cohron took place in the middle of the booking procedure, well before any probable-cause hearing, so this court must apply a Fourth Amendment standard to resolve Cohron's excessive-force claims.

An officer's subjective intentions are irrelevant to a Fourth Amendment inquiry, which instead uses a "reasonableness standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). "The 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. To determine whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment, the court must balance the "individual interest in being free from unreasonable seizures" against the "important government interest in protecting the safety of its peace officers and the public." *Williams v. City of Grosse Pointe Park*, 496 F.3d 482, 486 (6th Cir. 2007) (citing *Graham*, 490 U.S. at 396). The court must carefully consider the facts and circumstance of each particular case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

Cohron has presented sufficient evidence to create a genuine issue of material fact as to whether the defendants used unreasonable force. First, Cohron's own account describes a situation of excessive force, and nothing in the

4

record makes that account inherently unbelievable or impossible. *Cf. Brandenburg v. Cureton*, 882 F.2d 211, 216 (6th Cir. 1989) (finding summary judgment inappropriate when the parties presented plausible contradictory accounts of events). The evidence in the record and the videotape could lead a reasonable jury to conclude that Cohron's version of events is true. Cohron had been arrested for stealing meat. While it appears that he was initially combative at the time of arrest, from the videotape it appears that by the time of booking he had calmed down considerably and was compliant with the officers. Furthermore, he was naked from the waist up, and defendant Hornback had throughly searched his pants prior to the alleged assault. And, presumably, Cohron had been searched for weapons prior to being placed in the police cruiser and transferred to the Louisville Metro Department of Corrections for booking. Thus, it is unlikely that defendant Hornback could have reasonably believed Cohron to be armed. Based on these facts, a reasonable juror could conclude that Cohron, a practically naked, unarmed arrestee who momentarily took his hands off the wall to speak to the officers, did not pose a serious threat to defendant Hornback and his fellow officer in the booking area such that it was necessary to slam Cohron on the ground after he had been pushed up against the wall. Once Cohron was taken to the ground, he was subdued in the prone position. It is not apparent from the videotape that he struggled with officers to any significant degree after that point. Likewise, a juror could reasonably conclude that use of pepper spray after Cohron was already subdued on the ground

and not actively resisting officers was unreasonable. *See Baker v. City of Hamilton, Ohio*, 471 F.3d 601, 608 (6th Cir. 2006) (noting that the Sixth Circuit has "held repeatedly that use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law").

Defendants assert that they are entitled to qualified immunity. "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Pearson v. Callahan*, --U.S.--,129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harris v. Circleville*, 583 F.3d 356, 364-65 (6th Cir. 2009) (citing *Dominguez v. Corr. Med. Serv.*, 555 F.3d 543, 549 (6th Cir. 2009) and *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008)). "Qualified immunity will often operate to protect officers from the sometimes hazy border between excessive and acceptable force." *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 174 (6th Cir. 2004).

Sixth Circuit case law "clearly establish[es] the right of people who pose no safety risk to the police to be free from gratuitous violence during arrest." *Shreve v. Jessamine County Fiscal Court*, 453 F.3d 681, 687-88 (6th Cir. 2006). In

moving for summary judgment based on qualified immunity, a defendant must concede the most favorable view of the facts to the plaintiff for purposes of the motion. *See Phillips*, 534 F.3d at 534 (citing *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998)).

Cohron's version of the facts establishes that each of the defendant jail officials did not reasonably believe that Cohron posed a safety risk:

*David Basham*: Cohron kept his feet planted on the ground and apparently was out of reach from Basham as he turned away from the wall. Basham, therefore, cannot claim that he reasonably feared that Cohron was about to strike him. Basham also acted unreasonably when he helped take Cohron down to the floor. Because Cohron claims that he simply remarked that he was tired of having his genital region searched, Basham could not have believed that the strength of the force that he applied was necessary to quell Cohron's behavior. Basham also acted unreasonably when he assisted in restraining Cohron on the floor because Cohron claims that he was not resisting the officers.

*Christopher Hornback*: Because Cohron claims that he was doing nothing more than remarking and gesticulating, Hornback did not reasonably fear that Cohron was about to strike him. Hornback, moreover, knew that Cohron had taken his hands off the wall at least two times before without posing a threat. The third time was not drastically different from the first two. Hornback also maintained a controlling position while searching Cohron: He surrounded Cohron with his arms

7

and kept Cohron practically boxed in against the wall. On Cohron's version of the facts, Cohron posed little or no threat to Hornback.

*Gary Dixon*: Dixon did not reasonably believe that he needed to use pepper spray after Cohron was pinned to the floor. At least two of Dixon's colleagues already had Cohron under control, and Cohron claims that he never resisted the officers.

*Lisa Estes*: Estes did not reasonably believe that the level of restraint that she and the other officers applied was necessary after Cohron was pinned to the floor. Cohron claims that he was not resisting the officers, and the pepper spray further reduced any threat that he posed, if he posed a threat at all.

On these facts, the court cannot grant qualified immunity to the defendants. *See, e.g., Miller v. Sanilac County*, No. 09-1340, 2010 U.S. App. LEXIS 11469 (6th Cir. June 4, 2010) (denying qualified immunity to officer where plaintiff alleged that he was not resisting arrest when officer slammed him into car); *Pigram ex rel. Pigram v. Chaudoin*, 199 F. App'x. 509, 513 (6th Cir. 2006) (denying qualified immunity to an officer who slapped a suspect in the face because he was being unruly); *Baker v. City of Hamilton*, 471 F.3d 601, 607 (6th Cir. 2006) (denying qualified immunity because even though plaintiff had attempted to flee and was not restrained, he was attempting to surrender when he was struck on the head).

**Order**

Accordingly, **IT IS ORDERED** that Cohron's motion for summary judgment (R. 81) is **DENIED**. **IT IS FURTHER ORDERED** that defendants Basham, Dixon, Estes, and Hornback's motion for summary judgment (R. 82) is **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiff and the joint defendants shall file separate status reports within thirty days of the date of this order. In their respective status reports, the parties shall advise the court whether the case is ready for trial; proposed dates for the trial and an estimate of the number of days needed for trial; and, if a party believes the case is not trial-ready, an outline of and proposed dates for additional case events or deadlines.

**IT IS FURTHER ORDERED** that the clerk of court mail a copy of this memorandum opinion and order to the *pro se* plaintiff.

Signed on October 14, 2010

**Jennifer B. Coffman, Judge**
**United States District Court**