UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**CIVIL ACTION NO. 06-570-C**

**DAVID THOMAS COHRON,** **PLAINTIFF,**

**V.** **MEMORANDUM OPINION AND ORDER**

**CITY OF LOUISVILLE, KY, ET AL** **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the defendants' motion for summary judgment (R. 112) and David Thomas Cohron's motions for hearing (R. 119) and to resume representation by appointed counsel (R. 120). The defendants moved for summary judgment on the grounds that Cohron failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. Cohron has introduced evidence that purportedly shows that he did exhaust such remedies; defendants dispute the authenticity of this evidence. Because there is a genuine dispute of material fact regarding exhaustion, the court will deny the defendants' motion, grant Cohron's motions, and schedule an evidentiary hearing.

Cohron's suit is based on an alleged assault by corrections officers during Cohron's booking at Louisville Metro Department of Corrections on December 21, 2005. After the incident, Cohron spent a small amount of time in custody, and was released on January 9, 2006. Cohron was then re-incarcerated on January

21, 2006, and he filed a formal complaint over the incident with the Jefferson County Corrections Department's ("JCCD") Professional Standards Unit on January 31, 2006, and eventually filed this suit.  After more than five years of litigation, two rounds of motions for summary judgment, and an appeal, and long after the court's deadline for motions for summary judgment, the defendants moved for summary judgment on the ground that Cohron failed to exhaust his administrative remedies as required by the PLRA. In their motion, the defendants produced an affidavit from Sandy Northington, Grievance Coordinator for Louisville Metro Department of Corrections, stating that Cohron did not file a grievance over the alleged booking incident of December 21, 2005, as required by the JCCD Inmate Grievance Procedure.  Cohron, in response, produced an affidavit stating that he filed a grievance on December 22, 2005, as well as a copy of the alleged grievance form.  The defendants argue that Cohron's affidavit is not truthful and that his evidence is not authentic.  The court has cancelled the jury trial in this case in order to resolve this issue.  An evidentiary hearing is necessary to determine whether Cohron exhausted his administrative remedies.

Even though the defendants' motion is untimely filed, the issue of exhaustion must be resolved before the case is allowed to proceed on its merits.  The PLRA exhaustion requirement is not technically jurisdictional because the PLRA provides authority for a district court to dismiss certain meritless claims without first requiring exhaustion of administrative remedies.  See 42 U.S.C. § 1997e(c)(2); *Woodford v. Ngo*, 548 U.S. 81, 101 (2006).  Failure to exhaust is treated as an

affirmative defense for which the defendants bear the burden of proof. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). However, a district court does not have discretion under the PLRA to allow a plaintiff's claim to proceed despite his failure to exhaust such remedies. *See Woodford* at 84; 42 U.S.C. § 1997e(c)(1). Failure to exhaust administrative remedies is not a defense that is waived by failing to assert it prior to a responsive pleading, and it can be asserted at any time before or during trial. *See* Fed. R. Civ. P. 12(h). Thus, even though the defendants should have raised the exhaustion argument earlier, the court must determine whether Cohron exhausted his administrative remedies before allowing his case to proceed to trial on its merits. To allow the case to proceed to a jury trial with a conflict over exhaustion still outstanding would both violate the PLRA and offend judicial economy.

The issue of exhaustion presents the following questions of law: first, what constitutes exhaustion of administrative remedies for purposes of the PLRA in this case; second, whether "mootness," as defined in the JCCD Inmate Grievance Procedure, either excuses a failure to exhaust the remedies provided or makes such remedies unavailable for purposes of the PLRA; and third, whether an inmate who is re-incarcerated has a duty under the JCCD Inmate Grievance Procedure to resume a grievance that was previously rendered moot by his release.

First, the exhaustion requirement of the PLRA means proper exhaustion, or in other words, actual compliance with the applicable procedures as provided in the Jefferson County Corrections Department. *See Woodford* at 93; *see also Jones* at

3

922-923. For Cohron to have facially complied with the policy, he must have:

(1) attempted to resolve his grievance informally;[1]

(2) submitted a formal grievance form to a JCCD staff member no later than thirty days after the problem occurred, describing the grievance in writing, including enough data to "fully explain the problem," and explaining what relief or remedy he expected to receive;[2]

(3) if the grievance was not resolved by the Shift Commander to Cohron's satisfaction within five working days,[3] or if Cohron did not receive a response to his grievance within five working days,[4] he must have appealed within five more working days to the Divisional Director;[5]

(4) if the grievance was not resolved by the Divisional Director to Cohron's satisfaction within five working days,[6] or if Cohron did not receive a response to his appeal within five working days,[7] he must have appealed within five more working days to the Lieutenant Colonel of the JCCD;[8]

(5) if the grievance was not resolved by the Lieutenant Colonel within five working days (if the issues are straightforward),[9] or ten working days (if the Lieutenant Colonel must bring in a Grievance Appeal Investigator due to complexity

---

[1] *See* Jefferson County Corrections Department, Inmate Grievance Procedure § IV(E)(1), Nov. 22, 2002, R. 112-3.
[2] *See id.* at § IV(E)(2).
[3] *See id.* at § IV(F)(2)(b)(i); the policy defines "working days" in § III as "[n]ormal business days, excluding weekends and observed holidays."
[4] *See id.* at § IV(H)(4).
[5] *See id.* at § IV(F)(2)(b)(iii).
[6] *See id.* at § IV(F)(2)(b)(iv).
[7] *See id.* at § IV(H)(4).
[8] *See id.* at § IV(F)(2)(b)(v).

4

or factual disputes),[10] or if Cohron did not receive a response to his appeal within ten working days,[11] he must have appealed within five more working days to the Chief/Director of Jefferson County Corrections.[12]

Thus, in order to have properly exhausted his administrative remedies in compliance with the PLRA, Cohron must have filed his grievance within thirty days of the incident and then appropriately appealed within the applicable time limit at each phase, regardless of whether he actually received a response at any given phase. His administrative remedies would have been exhausted when he received a decision from the Chief/Director of Jefferson County Corrections or when the time for the Chief/Director to respond expired.

Second, when an inmate's release renders moot a grievance under the JCCD Inmate Grievance Procedure, his administrative remedies become unavailable, but he is not excused for a failure to comply while they were available. The Inmate Grievance Procedure addresses grievances of discharged/released inmates in Section IV(M): "[i]f an inmate is released prior to review and resolution of the grievance, or if a former inmate files a grievance [after] release, such grievances are considered, [sic] moot because [the] inmate has been discharged and will not be processed through the grievance procedure." R. 112-3 at 16. "Moot" is defined in Section III to mean "[u]nsettled, disconcerted, no longer applicable." *Id*. at 3. In other words, under the Procedure, an inmate's grievances that are in the process of

---

[9] *See id.* at § IV(G)(1).
[10] *See id.* at § IV(G)(2).
[11] *See id.* at § IV(H)(4).
[12] *See id.* at § IV(G)(2).

review or appeal will be terminated without resolution by the JCCD upon that inmate's release from incarceration. This mootness policy intentionally makes administrative remedies unavailable to a former inmate after he is released. It does not, however, in any way excuse noncompliance while the former inmate was incarcerated. Thus, in order to sufficiently exhaust administrative remedies for purposes of 42 U.S.C. § 1997e(a), a prisoner would have to strictly comply with the requirements of the Inmate Grievance Procedure while he was incarcerated, but would be required to take no further action after being released. *Cf. Williams v. Henagan*, 595 F.3d 610, 619 (5th Cir. 2010) (analyzing a similar mootness provision under different circumstances).

Finally, a prisoner who was released and then re-incarcerated is not required to resume a grievance process previously rendered moot by his release. The JCCD Inmate Grievance Policy provides no mechanism by which a grievance that has been rendered moot by a prisoner's release can be reinstated or resumed upon his reincarceration. In such a situation, where the Inmate Grievance Procedure provides no guidance to prisoners or prison staff, it would be unjust for the court to impose a requirement that a prisoner resume his grievance in order to meet the PLRA's exhaustion requirement.

Under these conclusions of law, and making all presumptions in Cohron's favor for the purposes of the defendants' summary judgment motion, *see Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986), Cohron exhausted his administrative remedies if he filed a grievance based on the December 21, 2005, booking incident.

6

Cohron claims that he filed a formal grievance regarding this incident on Thursday, December 22, 2005. The Shift Commander's response to Cohron's grievance was due within five working days which, taking into account the weekend and observed Christmas holiday on December 26, would have fallen on December 30, 2005. Cohron apparently did not receive a response to his grievance from the Shift Commander. Cohron's first appeal would therefore have been due five working days later, which, taking into account the weekend of December 31, the observed New Year's Day holiday on January 2, 2006, and the weekend of January 7, would have fallen on January 9, 2006, the day Cohron was released from custody at 1:07 p.m. When Cohron was released, his grievance became moot under the JCCD Inmate Grievance Procedure; as the administrative remedy was no longer available, Cohron had no further obligation to exhaust. Because the Inmate Grievance Procedure does not provide for reinstatement of a grievance upon re-incarceration, Cohron was not required to pursue his original grievance further when he was re-incarcerated only eleven days later, which was thirty-one days after the alleged incident occurred and one day too late to file a new grievance. Accordingly, if the evidence presented by Cohron is authentic, he has properly exhausted his administrative remedies for purposes of the PLRA, and the defendants are therefore not entitled to summary judgment. If the evidence is not authentic, the court will grant the defendants' pending dispositive motion.

　　Because there is a genuine dispute as to whether Cohron's evidence of exhaustion is authentic, and because the exhaustion issue must be put to rest

7

before the case proceeds to trial, the court will grant Cohron's motion for an evidentiary hearing.  If Cohron's evidence of exhaustion is not authentic, his case will be dismissed for failure to exhaust his administrative remedies.  If Cohron did not file a grievance on December 22, 2005, then the only action on which he can rely to support his exhaustion claim is his filing of an internal complaint with the Professional Standards Unit on January 31, 2006.  Both because this was an act outside of the Inmate Grievance Procedure and because it was not filed within the required thirty days of the alleged incident, it cannot support Cohron's exhaustion claim.  If Cohron's case is dismissed, such dismissal would be with prejudice because the time limits for Cohron to exhaust his remedies have long since expired.

     A prisoner plaintiff has no right to a jury trial solely on the issue of exhaustion.  *See Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008); *Wyatt v. Terhune*, 315 F.3d 1108, 1119-20 (9th Cir. 2003). Furthermore, in *Pavey*, the exhaustion issue shared common questions of fact with the underlying incident and the circuit court dictated an elaborate procedure to protect the jury in the trial on the merits from being prejudiced by the judge's findings of fact on the exhaustion issue.  Cohron has claimed no such interconnected matters of fact between his efforts to exhaust and the alleged incident of December 21, 2005, and the exhaustion issue does not legally intersect with the merits of the action; no such procedural protections are necessary in this case to ensure an uninfluenced jury verdict if this case does go to trial. Whether Cohron's evidence of exhaustion is credible will be determined by the court at the evidentiary hearing.

8

Finally, the complexities of an in-court evidentiary hearing justify expanding the role of Cohron's appointed counsel, and the court will therefore grant Cohron's motion to resume representation for purposes of the evidentiary hearing.

Accordingly,

**IT IS ORDERED** that the defendants' motion for summary judgment (R. 112) is **DENIED**.

**IT IS FURTHER ORDERED** that Cohron's motions (R. 119) and (R. 120) are **GRANTED**.

The court will contact the parties to schedule the evidentiary hearing in this matter.

Signed on March 22, 2012

Jennifer B. Coffman, Judge
United States District Court

9